*In the Matter of Brawner Builders, Inc.*, No. 1451, September Term, 2024, filed May 29, 2026. Opinion by Friedman, J.

**HEADNOTES:**

**PUBLIC CONTRACTS — COMPENSATION**

In an underrun scenario, a Variations in Estimated Quantities (VEQ) clause allows the contractor to demand that the government equitably adjust the contract price if the government procures so much less than the parties had expected that it increases the contractor's actual costs per unit.

**PUBLIC CONTRACTS — EXTRA COSTS OR EXPENSES IN GENERAL**

A contractor must satisfy a four-prong test to prove its entitlement to an equitable adjustment under a VEQ clause in an underrun situation: (1) the government purchased less than 75% of the estimated quantity of a contract item; (2) the actual cost per unit of the item that the government purchased exceeds the contract cost per unit; (3) the actual cost per unit of the item that the government purchased is greater than the per unit cost would have been for units purchased absent the underrun; and (4) the underrun is the sole reason that the actual cost per unit increased. Satisfaction of the first prong establishes the underrun. The remaining three prongs together establish that the contractor's actual costs per unit increased as a result of the underrun.

**PUBLIC CONTRACTS — EXTRA COSTS OR EXPENSES IN GENERAL**

Where contractor's calculation failed to mention contract costs per unit or the cost of units purchased absent an underrun, contractor could not satisfy prongs (2) and (3) of the four-prong test to establish entitlement to an equitable adjustment under the VEQ clause: that its actual costs per unit exceeded these amounts.

**PUBLIC CONTRACTS — EXTRA COSTS OR EXPENSES IN GENERAL**

Contractor failed to satisfy prong (4) of the four-prong test to establish an equitable adjustment under the VEQ clause, that the increased actual costs per unit were caused by the underrun, because its increased actual costs were caused by its decision to buy things that were excluded from payment under the contract.

Circuit Court for Baltimore County
Case No. C-03-CV-23-000136

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1451

September Term, 2024

_____

IN THE MATTER OF BRAWNER
BUILDERS, INC.

_____

Friedman,
Shaw,
Kehoe, Christopher B.
  (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Friedman, J.
_____

Filed: May 29, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

When the State government enters into a procurement contract, it may provide estimates of the items that it will purchase from the contractor. If it does, it is required by law to insert a Variations in Estimated Quantities (VEQ) clause into the contract. The VEQ clause provides a narrow remedy to a narrow problem: if the government purchases so much less of an item that the cost per unit increases, the VEQ clause allows the contractor to demand an equitable adjustment to the contract price for its increased actual costs. This clause is intended to provide some security for the contractor, not a mechanism to get more money for a bid that, in hindsight, turns out to have been unwise.

## FACTS

Appellee, Brawner Builders, Inc. (Brawner), entered into a procurement contract with appellant, the State Highway Administration (SHA), to provide labor and equipment, such as traffic signs and vehicles, for highway maintenance. The contract provided estimated total quantities and payment for the labor and equipment that SHA expected to purchase from Brawner throughout the contract's two-year term. SHA agreed to pay Brawner only for those quantities that it ultimately purchased from Brawner. SHA would not pay Brawner for things that Brawner bought and let sit idle.

The contract also included a VEQ clause:

> Where the quantity of a pay item in this Contract is an estimated quantity and where the actual quantity of such pay item varies more than 25 percent above or below the estimated quantity stated in this Contract, an equitable adjustment in the Contract price shall be made upon demand of either party. The equitable adjustment shall be based upon any increase or

> decrease in costs due solely to the variation above 125 percent or below 75 percent of the estimated quantity.[1]

This VEQ clause allows the contractor to demand an equitable adjustment to the contract price if the government purchases less than 75% of the estimated contract quantity (an underrun), thereby increasing the contractor's actual costs per unit. The same analysis applies to the government's demand for an equitable adjustment when it purchases more than 125% of the estimated contract quantity (an overrun), thereby decreasing the contractor's actual costs per unit.

At the end of the two-year term, Brawner invoked the VEQ clause to demand an equitable adjustment from SHA. Brawner claimed that SHA had purchased less than 75% of the estimated quantities of various contract items, and that these underruns had increased Brawner's actual costs per unit. SHA denied Brawner's demand. It asserted that Brawner had not established its claim that its actual costs per unit had increased.

Brawner appealed from SHA's denial of its demand to the Maryland State Board of Contract Appeals (MSBCA). Brawner revised the specific amount that it claimed multiple times, but settled on a claim for $1,806,493.63.[2] The MSBCA denied Brawner's appeal. It

---

[1] Md. Code, State Fin. & Procurement § 13-218(a)(3) requires that procurement contracts include a clause "covering … variations that occur between estimated and actual quantities of work in a procurement contract." The implementing COMAR regulation provides the required language for the VEQ clause in all "construction contracts that contain estimated quantity items." COMAR 21.07.02.03. The required language was inserted into the parties' contract.

[2] Brawner also asserted a second and third claim, which are discussed below.

The second claim was for $1,784,300.93, which was based on a formula set forth in *TPH Indus., Inc.,* MSBCA No. 2311 (2003). The MSBCA rejected Brawner's second claim because *TPH* does not apply to contracts with a VEQ clause. The circuit court affirmed

determined that, although Brawner had established that there was an underrun, Brawner had failed to establish that its actual costs per unit increased as the VEQ clause requires.

Brawner filed a petition for review of the MSBCA's decision in the Circuit Court for Baltimore County. The circuit court determined that Brawner established that the underrun caused its actual costs per unit to increase. The circuit court reversed the decision of the MSBCA and remanded the case to the MSBCA with instructions to award Brawner an equitable adjustment. SHA noted this timely appeal.

_____

that part of the MSBCA's decision. Brawner did not appeal from that ruling, so it is not before us.

Brawner asserted yet a third claim after the MSBCA held a hearing on Brawner's claims. Brawner claimed that because SHA had "self-performed" the contract, the VEQ clause is "set aside" and Brawner is entitled to the unpaid balance of the contract: $2,696,571.65. The MSBCA found that Brawner had failed to establish that SHA "self-performed" Brawner's obligations. The circuit court reversed that part of the MSBCA's decision. We reverse the circuit court and reinstate the MSBCA's determination that Brawner cannot recover under this claim. Brawner never asserted it to SHA, so Brawner failed to preserve this claim. *See* COMAR 21.10.04.04 (claim must be filed with the MSBCA within 30 days of the denial of a claim by an agency such as SHA). We cannot reverse the MSBCA for failing to award relief based on an unpreserved claim. Even if we did, this claim is not recognized under Maryland law and relies on a misinterpretation of federal law. *See Appeal of Maya Transit Co.*, ASBCA No. 20186, 75 BCA �" 11552 (1975) (holding that, if the government performs the contractor's obligations, the contractor is only entitled to compensation to the *extent* of the government's performance). Moreover, as the MSBCA found, the record does not support Brawner's assertion that SHA "self-performed." All that the record reveals is vague testimony that SHA, at some unknown time, completed some unknown amount of the work that Brawner promised to perform. That is insufficient to substantiate Brawner's sweeping claim.

3

**ANALYSIS**

In its appeal, SHA contends that the MSBCA was correct in concluding that Brawner failed to prove its entitlement to an equitable adjustment under the VEQ clause. We agree.

When we review a decision of the MSBCA, we look past the decision of the circuit court to evaluate the MSBCA's decision directly. *People's Counsel for Balt. Cnty. v. Surina*, 400 Md. 662, 681 (2007). We review the MSBCA's legal conclusions without deference and will affirm its decision when supported by substantial evidence. *Md. Aviation Admin. v. Noland*, 386 Md. 556, 571 (2005).

The VEQ clause provides a specific remedy for a specific problem. In an underrun scenario, it allows the contractor to demand that the government equitably adjust the contract price if the government procures so much less than the parties had expected that it increases the contractor's actual costs per unit.[3] *Genstar Stone Paving Prods. Co. v. State Highway Admin.*, 94 Md. App. 594, 612-13 (1993) (explaining that a VEQ clause entitles the contractor to "an adjustment to *the contract unit price* for the [underrun] in an amount equal to the difference in actual unit costs due solely to the variation"). It must be understood exclusively in this narrow context. The VEQ clause does not apply simply because the government procures less than the contractor expected. The underrun must cause the actual costs per unit to increase. When the VEQ clause does apply, the equitable adjustment is limited to the increased actual costs. *See id.* The VEQ clause does not allow

---

[3] *See infra* note 4.

4

the contractor to obtain a windfall, such as the unpaid balance of the contract price. *Id.* at 612.

In *Genstar*, this Court established a four-prong test for an underrun situation that a contractor must satisfy to prove their entitlement to an equitable adjustment under a VEQ clause: (1) the government purchased less than 75% of the estimated quantity of a contract item; (2) the actual cost per unit of the item that the government purchased exceeds the contract cost per unit; (3) the actual cost per unit of the item that the government purchased is greater than the per unit cost would have been for units purchased absent the underrun; and (4) the underrun is the sole reason that the actual cost per unit increased.[4] *See id.* at 613. Satisfaction of the first prong establishes the underrun. The remaining three prongs together establish that the contractor's actual costs per unit increased as a result of the underrun. *Id.* at 612-13.

The MSBCA determined that, based on Brawner's calculations, SHA had purchased less than 75% of the estimated contract quantities of 13 items. This evidence satisfied the first prong of *Genstar*: the existence of an underrun. SHA concedes that this determination was correct.

Brawner also claimed to the MSBCA that its calculations satisfied the remaining three prongs of *Genstar*, and that, as a result, the underrun caused its actual costs per unit to increase. It described its calculation as follows:

---

[4] The same test applies in an overrun situation. The only differences are that the numbers change and that the government proves that costs decreased, rather than increased. *See Genstar*, 94 Md. App. at 613.

[1]     Brawner calculated its original unit cost for each pay item.

[2]     Brawner multiplied its original unit cost for each pay item by the Contract Quantity to obtain its total cost to perform each Contract pay item.

[3]     Brawner divided the total cost of each contract pay item by the actual quantity used by SHA to determine the adjusted unit cost for each pay item.

[4]     Brawner subtracted the original unit cost for each pay item from the adjusted unit cost of each pay item to obtain the increase in unit cost to Brawner.

[5]     Brawner multiplied [the] increase in unit cost by the actual pay item quantities used by SHA to establish the increase[d] cost to perform.

The MSBCA concluded that Brawner failed to satisfy the remaining three prongs of *Genstar*, and thus failed to prove that its costs increased because of the underrun.

The MSBCA determined that this calculation failed to satisfy prong (2), that the actual costs per unit exceed the contract costs per unit, and prong (3), that the actual costs per unit exceed the costs of units purchased absent an underrun. We agree with the MSBCA's conclusion. Brawner's calculation does not mention contract costs per unit or the cost of units purchased absent an underrun. Without these amounts, Brawner's calculation cannot satisfy prongs (2) and (3) and show that its actual costs per unit exceeded these amounts. *See id.* at 613.

Furthermore, the MSBCA determined that Brawner failed to satisfy prong (4), that the underrun was the sole reason that the actual costs per unit increased. The MSBCA concluded that Brawner's claimed "increased actual costs per unit" were caused not by the underrun, but by Brawner's decision to buy more items than SHA purchased and to let

6

them sit idle. We agree with the MSBCA. Brawner's complex calculation obscures the fact that its "increased actual costs" were not caused by the underrun. A simplified version of Brawner's calculation makes this clear:

(1) Brawner calculated what it cost to buy every item in the contract, including those that SHA never purchased and thus sat idle. Brawner calls this amount its "total cost to perform," or its actual costs in the language of the VEQ clause.

(2) Brawner reduced these "actual costs" by SHA's payment to Brawner for the units that it purchased. This leaves only its idle costs. Brawner calls its idle costs its "increased cost to perform," or its increased actual costs in the language of the VEQ clause, and claims entitlement to the idle costs as an equitable adjustment.

This simplified calculation demonstrates that Brawner's purported increased actual costs were its costs to buy more items than SHA purchased and to let them sit idle. The contract provided that SHA would not pay Brawner for idle time. These costs are therefore not caused by an underrun in estimated contract quantities, but by Brawner's decision to buy things that were excluded from payment under the contract. Brawner failed to satisfy prong (4) of *Genstar*, that the increased actual costs per unit were caused by the underrun. *See id.*

By failing to satisfy the last three prongs of *Genstar*, Brawner failed to establish the only basis for an equitable adjustment under the VEQ clause—that its actual costs per unit increased as a result of the underrun. Instead, Brawner demands payment for a bid that proved unwise in hindsight. That isn't the function of the VEQ clause. We conclude that the MSBCA's decision that Brawner failed to establish entitlement to an equitable adjustment under the VEQ clause was legally correct and was supported by substantial

evidence. We reverse the decision of the circuit court and remand with instructions to

reinstate the decision of the MSBCA.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY IS REVERSED. CASE REMANDED TO THE CIRCUIT COURT WITH INSTRUCTIONS TO REINSTATE THE DECISION OF THE BOARD OF CONTRACT APPEALS. COSTS TO BE PAID BY APPELLEE.**